## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**JOSEPH PETHTEL,**

                Plaintiff                     Case No. 2:07-CV-62

**vs.**                                  District Judge Sargus
                                        Magistrate Judge

**LARRY DENNISON, JR., ET AL.,**

                Defendants

### OPINION AND ORDER

This action was originally filed January 5, 2007, in the Common Pleas Court of Jefferson County, Ohio (Case No. 2007- CV-9) by Plaintiff Joseph Pethtel (Pethtel or Plaintiffs) one day before his nineteenth birthday based primarily upon a particular incident that occurred October 2, 2002 while he was a special education student in class at Indian Creek Junior High School in Jefferson County.[1] Complaint, Doc. 4, ¶¶ 1-2, 6-10. Defendants are Larry Dennison, Jr. (Dennison), teacher[2] in the classroom at the time of the incident in questions, Mark Furda (Furda), the junior high's principal at the time, and the Board of Education for the Indian Creek School District (the Board). Id., ¶¶ 3-5, 10. Plaintiff's Complaint sets out four separate causes of action: Count One, against Defendant Dennison for assault and battery (Id., ¶¶ 11-14); Count Two, against all three Defendants for negligence allegedly resulting in physical and mental injury to

---

1. Under Ohio law, minors having causes of action accrue during minority are permitted to commence litigation thereon within the appropriate period of limitations after they reach majority. Ohio Revised Code Section 2305.16.

2. It appears from the Board's Answer that, technically, Dennison was employed as an "intervention specialist" teaching junior high special education classes including Plaintiff's eighth grade science class. Doc. 6, ¶¶ 4-6.

Plaintiff (Id., ¶¶ 15-20); Count Three, against all three Defendants for intentional infliction of emotional distress (Id., ¶¶ 21-27); and Count Four, under 42 U.S.C. §1983, against Defendant Dennison for violation of Plaintiff's rights under the U. S. Constitution[3] (Id., ¶¶ 28-31), against Defendant Furda for violation of Plaintiff's rights under both the Constitution and federal statutes[4] (Id., ¶¶ 32- 35), and against the Defendant Board for violation of Plaintiff's federal constitutional rights (Id., ¶ 36). Plaintiff seeks compensatory damages against all three Defendants as well as punitive damages against Defendants Dennison and Furda. Id., p.5.

By Notice filed January 26, 2007 (Doc. 3), the three Defendants removed the case to this Court as authorized by 28 U.S.C. §§ 1331, 1343, and 1441 et seq, based on Count Four of the Complaint, which seeks vindication of rights arising under the Constitution and laws of the United States. On February 5, 2007, Defendants Furda and the Board filed Answer to the Complaint (Doc. 6), and on March 15, Defendant Dennison did as well (Doc. 8). Thereafter, the three Defendants jointly moved with supporting memorandum for summary judgment on Count IV of the Complaint and that the case be remanded to the Jefferson County Com-mon Pleas Court for all further proceedings. Doc. 11. The case is now before the Court for con-sideration of that motion together with the additional memoranda and materials filed in support and op-position by the Defendants and by the Plaintiff. Docs. 14, 19, 20, 21.

Plaintiff's Response Memorandum (Doc. 14) also includes a motion for a continuance

---

3. The Complaint specifically refers to the First, Fourth, Eighth, and Fourteenth Amendments. See Doc. 3-2, ¶¶ 30, 33.

4. The federal statutes named in the Complaint are the "Individuals with Disabilities Education Improvements Act [generally, 20 U.S.C. §§ 1400 et seq., although, in point of fact, that specific title refers only to the 2004 amendments of the earlier-enacted, original IDEA contained in Pub. L. 108-446 of Dec. 3, 2004] and the Equal Educational Opportunities Act of 1974 [20 U.C.S. §§ 1701 et seq. or EEOA]." Doc. 3-2, ¶ 33.

pursuant to Fed. R. Civ. P. 56(f) for the purpose of conducting discovery on the issue of the Defendant Board's knowledge of previous similar conduct by Defendant Dennison as that complained of by Plaintiff. In light of the Court's finding (see pp.15-17 below) that, considering all evidence in a light most favorable to Plaintiff, no constitutional violation occurred in this case, the Court concludes that such discovery would be futile, and the continuance will be denied.

**I.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); accord *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); see *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain

3

from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see *Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; see *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); see also *Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

## II.

In this case, the pleadings, admissions, and affidavits on file with the Court reveal no legally significant dispute as to the essential facts and circumstances insofar as Plaintiff's federal claims in Count Four are concerned. During the 2002-2003 school year, Defendant Dennison was employed by the Indian Creek School District as an intervention specialist who taught special education classes at the Indian Creek Junior High School. Plaintiff was a special education student in one or more classes taught by Defendant Dennison. Drawing all reasonable inferences from Plaintiff's own accounts of the seminal classroom incident in question (as found in his 2002, handwritten statement given at the time to Defendant Furda, the principal, (Doc. 11-3, Ex. D) and his 2007 affidavit submitted in support of his counsel's opposition to the present motion for summary judgment (Doc. 14-5)), and considering those accounts together with uncontroverted portions of Defendant Dennison's account of the same incident (as found in his now-sworn contemporary statement also provided to Defendant Furda at the time (Docs. 11-2, 11-3,

4

Ex. C))[5] the facts and circumstances of that incident are essentially as follows.

On October 2, 2002, Plaintiff was present in Defendant Dennison's eighth grade science class and was speaking in class without permission. Defendant Dennison had given Plaintiff one or more verbal warnings about this conduct, including, at last, telling Plaintiff that if he continued, Dennison would put masking tape (which he displayed at the time) over Plaintiff's mouth. Plaintiff then again spoke without permission (he says, to slow down the speed of the lesson; Dennison says, to speak to another student), and there ensued an incident in which Dennison went to Plaintifff's desk, with the masking tape, and placed pieces of it, first on Plaintiff's mouth, and then around his head and hands, which he had raised to his head. At this point, both Dennison and the class were laughing, and Plaintiff began attempting to remove the tape.. His hand-written contemporary statement (Doc. 11-3, Ex. D) appears to say[6] that he, Plaintiff, then "ript" the tape off his own mouth, but that he was having difficulty with the rest when Defendant Dennison "came back and pulled on the tape [too hard in getting it off] and it hurt so bad that [Plaintiff] stood up and almost cried." Plaintiff's 2007 affidavit asserts that he "was upset and embarrassed by Mr. Dennison's actions." Doc. 14-5. Defendant Dennison held Plaintiff after that class before his lunch break to apologize for his discomfort, which Dennison ascribed to Plaintiff's hair getting pulled during the tape removal. Plaintiff then went back to classes in the afternoon, which included classes with Defendant Dennison.

5. Otherwise inadmissable hearsay evidence may not be considered in ruling on a motion for summary judgment *(Granberry v. Babtist Memorial Hosp.*, 145 F.3d 1331 (6th Cir. 1998, unpublished), 1998 WL 279377); and these are the only non-hearsay accounts of the precipitating events in question.

6. Plaintiff's handwriting and spelling were such at the time that parts of his statement are not clear beyond all question. However, neither Plaintiff nor his counsel has disputed the accuracy of Defendant Furda's interpretation of the statement as done at the time of his investigation of the incident, which interpretation supports the analysis here. Doc. 11-3, Ex. D.

5

According to their affidavits, upon learning of the tape incident, Plaintiff's parents decided they did not want Defendant Dennison in charge of any of Joey's (Plaintiff's) classes, and his father called Defendant Furda to inform him of that fact. Docs. 14-2 and 14-4. According to Defendant Furda's affidavit (Doc. 11-3), he received this call a few minutes past noon October 3rd, and the same day began an investigation that included interviewing four students from the class in question and receiving written statements from Defendant Dennison that same day (Ex. C) and from Plaintiff Joseph Pethtel the next (Exs. D and E). Without dispute from Plaintiff, Defendant Furda further reports forwarding the results of his investigation "to the Superintendent for disposition" as well as his understanding that the Superintendent "issued a written reprimand to [Defendant] Dennison." Doc. 11-3, p.2..

The Answer filed on behalf of Defendants Furda and the Board (Doc. 6) attaches as Exhibit B a copy of what purports to be this reprimand letter, dated November 23, 2002, and directed to Defendant Dennison. Exhibit A to the same document is a copy of what purports to be the five-paragraph corporal punishment policy of the Indian Creek Board of Education, apparently adopted July 21, 1993. Among others, it provides, "CORPORAL PUNISHMENT SHALL NOT BE ADMINISTERED BY ANY STAFF MEMBER OF THE INDIAN CREEK LOCAL SCHOOL DISTRICT" and that employees who inflict "unnecessary, unreasonable, irrational or inappropriate force upon a student...may be subject to disciplinary action by the Board." Neither of these documents are challenged by Plaintiff. .

Again according to their affidavits, at some unspecified point shortly after the father's call to Defendant Furda, Plaintiff's parents, accompanied by their attorney, met with Defendant Furda in his office. The parents were advised that "to remedy the situation Joey would be placed in other classes." Through their attorney, the parents expressed concern that "Joey would not be

6

able to handle regular classes;" but upon being assured by Defendant Furda that "it would not be a problem for Joey," the parents agreed. Docs. 14-2, 14-4. They also say that they were not advised of any right or opportunity to appeal the principal's decision. *Ibid.* Finally, the parents state that Plaintiff was unable to keep pace with regular classes and that, as a result, they moved him to another middle school in a different town. *Ibid.*

Lastly, Plaintiff submits the 2007 affidavit of a fellow Indian Creek Junior High student although not in the same class. Doc. 14-3. His non-hearsay statements include that in another science class, the previous year, Defendant Dennison "had placed tape over [that student's] mouth several times and on at least one occasion, pulled out moustache hairs when removing the tape," and also had "put tape around the top of [his] pants and stomach, attempted to staple [his] pants to his shirt and shot rubber bands and other small items at [him] over the year." Affiant states it appeared to him "that Mr. Dennison thought all this was funny." Affiant also states that he made Defendant Furda aware of "some of these incidents" but that he appeared to be supportive of Defendant Dennison and that "nothing came of it."

### III.

The only count of Plaintiff's Complaint under consideration here is sub-headed, "COUNT FOUR[,] 42 U.S.C. SECTION 1983," and in argument his counsel states that "All of Plaintiff's federal claims against all defendants have been brought under 42 U.S.C. § 1983." Doc. 3-2, p. 4. Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

By its terms, this statute creates no substantive rights; it merely provides remedies against state

7

actors for deprivations of rights established elsewhere under federal law or the Constitution. *See Adair v. Charter County of Wayne*, 452 F.3d 482, 492 (6th Cir. 2006).

Because in both the federal portion of his Complaint against Defendant Furda (see Doc. 3-2, ¶ 32) and in his counsel's argument (Doc. 14, pp. 9-10), Plaintiff names and relies on certain federal statutes, it should first be understood that in fact neither of those statutes creates rights that are at issue in this case, brought under Section 1983 and exclusively seeking damages for personal injury ("mental anguish, embarrassment, humiliation and emotional distress."). Doc. 3-2, ¶ 35. This is so in the first instance because the IDEA does not provide for recovery of such damages, and in *Crocker v. Tennessee Secondary School Athletic Ass'n*, 980 F.2d 382, 387 (6th Cir.1992), our circuit squarely held:

> Because Crocker cannot recover general damages under the EHA[7], he cannot recover damages under § 1983 for any violation of his rights secured by the EHA. Section 1983 merely secures the federally protected rights a plaintiff already holds. It does not expand those rights. Through § 1983 Crocker was able to bring an action that might otherwise have been foreclosed. Section 1983 did not provide a right to damages where none existed before.

Plaintiff seeks to avoid this holding based on our circuit's later ruling in *Covington v. Knox County v. Knox County Sch. Sys., 205 F.3d 912* (6th Cir. 2000), but that case does not apply here. As explained recently by the Per Curiam opinion of another Sixth Circuit panel in *Long v. Dawson Springs Independent School Dist.*, 197 Fed.Appx. 427 at 432, (6th Cir. 2006,

---

7. Plaintiff refers to this statutory provision as the "IDEIA" but, as noted above, this title refers only to amendments of the basic Act that post-date the basis of his claim in this case, and it is clear he intends reference to what is now generally referred to as the IDEA (20 U.S.C. §§ 1400 et seq.), which, as here, has also been known as the Education of the Handicapped Act (EHA) and the Education of All Handicapped Children Act (EAHCA). This Opinion will continue to refer to the Act as the IDEA even though some cited cases may refer to it by one of the other acronyms. See *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 n. 2 (6th Cir.2000).

8

unpublished), 2006 WL 2472899 at 5:

> .... [I]n *Town of Burlington* [471 U.S. 359 (1985)], the Supreme Court appeared
> to suggest that money awards under IDEA should not be made as "damages."
> Our court read this case as holding that money damages are not available as a
> remedy for violations of IDEA. *Crocker v. Tennessee Secondary School Athletic
> Ass'n*, 980 F.2d 382, 386 (6th Cir.1992). Throughout this litigation, Long has
> criticized the *Crocker* decision in this particular. The *Crocker* holding is con-
> sistent with the view of other circuits on this question, however. See *Marta
> Diaz-Fonseca v. Commonwealth of Puerto Rico*, 451 F.3d 13 (1st Cir.2006);
> *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 124 (1st Cir.2003); *Polera v. Bd.
> of Educ.*, 288 F.3d 478, 485-86 (2nd Cir.2002); *Sellers v. Sch. Bd. of Mannassas*,
> Va., 141 F.3d 524, 527 (4th Cir.1998); *Charlie F. v. Bd. of Educ. of Skokie Sch.
> Dist.*, 98 F.3d 989 (7th Cir.1996); *Heidemann v. Rother*, 84 F.3d 1021, 1023 (8th
> Cir.1996); *Witte v. Clark Cty. Sch. Dist.*, 197 F.3d 1271, 1275 (9th Cir.1999).
> In any event, our panel is bound by the decision of the *Crocker* panel. *United
> States v. Yoon*, 398 F.3d 802, 806 (6th Cir.2005). No monetary damages may be
> awarded to the plaintiff in this case under the IDEA.
>
> Long also seeks money damages under 42 U.S.C. § 1983. In *Gean v.
> Hattaway*, 330 F.3d 758 (6th Cir.2003), we affirmed the view we had taken in
> *Covington v. Knox County Sch. Sys.*, 205 F.3d 912 (6th Cir.2000) that IDEA
> claims "may be brought either directly under the IDEA's own provisions for dis-
> pute resolution, or, in some circumstances, under 42 U.S.C. § 1983." However,
> it appears that our court has not allowed plaintiffs to seek money damages for
> violations of the IDEA under § 1983. That is appropriate, as § 1983 does not
> permit us to recognize rights that are not specifically provided for in federal law.
> See, e.g., *Gardenhire v. Schubert*, 205 F.3d 303 (6th Cir. 2000). The existence of
> express remedies in a statutory scheme demonstrates that Congress intended to
> supplant other remedies that might otherwise be available to complainants. *Mid-
> dlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1,
> 14-15, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); see also *City of Rancho Palos
> Verdes v. Abrams*, 544 U.S. 113, 120, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005);
> *Blessing v. Freestone*, 520 U.S. 329, 342, 117 S.Ct. 1353, 137 L.Ed.2d 569
> (1997).

This Court, of course, is as bound by the rule of *Crocker* and by the other authority cited above

as was our circuit court in the *Long* case.

In the second instance, although Plaintiff's federal claim against Defendant Furda also

alleges violation of the Equal Educational Opportunities Act (EEOA, 20 U.S.C. §§ 1701 et

seq.), that statutory provision simply does not purport to apply to any circumstance the Plaintiff has pled or shown he might be able to prove here, much less does it provide for the award of the general damages sought, if he had. That Act declares it to be the policy of the United States that "all children enrolled in public schools are entitled to equal educational opportunity without regard to race, color, sex, or national origin" and that, in order to carry out such policy, it is the purpose of the Act "to specify appropriate remedies for the orderly removal of the vestiges of the dual school system." 20 U.S.C. § 1701(a)(1) and (b). Although the Act does provide for a right of civil action by an aggrieve individual (see 20 U.S.C. §1706), Plaintiff does not plead, or offer to prove, facts that could qualify him as such a person; and, in any event, the statute nowhere suggests the existence of a remedy in damages for personal injury (cf., 20 U.S.C. §§ 1712, 1713).

Thus, all federal claims of Count Four in this case depend entirely upon 42 U.S.C. §1982 and upon identifying a violation of some federal *constitutional* right made applicable to the states by the Fourteenth Amendment, rather than upon any rights created directly by federal statute. This is so because, as explained above:

> Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3, 61 L.Ed.2d 433 (1979). The first step in any such claim is to identify the specific constitutional right allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989); and *Baker v. McCollan, supra*, 443 U.S., at 140, 99 S.Ct., at 2692.

*Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff's Complaint specifically refers to the First, Fourth, Eighth, and Fourteenth Amendments, as well as to the Equal Protection and Due Process clauses of the last. Doc 3-2, ¶¶

10

30, 33. In considering these claims in light of Defendants' motion for summary judgment, the

Court's approach is first guided by the general rule noted by the Supreme Court in *Albright* that

.... Where a particular Amendment "provides an explicit textual source of con-
stitutional protection" against a particular sort of governmental behavior, "that
Amendment, not the more generalized notion of "substantive due process" must
be the guide in analyzing these claims." 510 U.S. at 272 (quoting *Graham v.
Connor*, 490 U.S. 386, 395 (1989)

With respect to any First Amendment claim, it is clear that the constitutional rights of

students in public school are limited by the circumstances of that special environment. See

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969); *Bethel Sch. Dist. No.

403 v. Fraser*, 478 U.S. 675, 682 (1986). Here, Plaintiff admittedly was speaking out in class,

and our circuit has held that,

.... conduct by the student, in class or out of it, which for any reason – whether it
stems from time, place, or type of behavior – materially disrupts classwork or
involves substantial disorder or invasion of the rights of others is, of course, not
immunized by the constitutional guarantee of freedom of speech.

*Salehpour v. Univ. of Tenn.*, 159 F.3d 199 (6th Cir. 1998) (quoting *Tinker* at 503). Further,

the Sixth Circuit has noted that "*Tinker* . . . supports the conclusion that teachers have broad

discretion in limiting speech when they are engaged in administering the curriculum." *Settle v.

Dickson County Sch. Bd.*, 53 F.3d 152, 155 (6th Cir. 1995). Clearly, no arguable First Amend-

ment claim can be presented on the facts of this case.

With respect to Plaintiff's reliance on the Fourth Amendment, although the Supreme

Court has held that the amendment's "fundamental command ... that searches and seizures be

reasonable" does apply to searches conducted by public school officials. (*New Jersey v. T. L.O.*,

469 U.S. 325, 340 (1985)), any claim based on violation of that command at least requires, as a

11

threshold matter, that a "search" and/or a "seizure" is involved . See *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (U.S. 1998) (holding that the Fourth Amendment covers only "searches and seizures."). In this case, there are no such allegations or offers of proof.

Plaintiff also expressly claims violation of Eighth Amendment rights and "infliction of cruel and unusual punishments ". Doc. 3-2, ¶ 30. The Eighth Amendment to the Constitution prohibits, among other things, the infliction of cruel and unusual punishments. However, in *Ingraham v. Wright,* 430 U.S. 651 (1977), in considering the questions of cruel and unusual punishment and procedural due process in a case brought under the civil rights statutes and involving corporal punishment of Florida school students, the Supreme Court stated:

> We conclude that when public school teachers or administrators impose disciplinary corporal punishment, the Eighth Amendment is *in*applicable. The pertinent constitutional question is whether the imposition is consonant with the requirements of due process.

*Id.* at 671 (footnoite omitted) (emphasis supplied). After reviewing Fourteenth Amendment due process requirements and provisions of Florida law as applicable in that situation, the Court then held:

> Petitioners cannot prevail on either of the theories before us in this case. The Eighth Amendment's prohibition against cruel and unusual punishment is inapplicable to school paddlings, and the Fourteenth Amendment's requirement of procedural due process is satisfied by Florida's preservation of common-law constraints and remedies. We therefore agree with the Court of Appeals that petitioners' evidence affords no basis for injunctive relief, and that petitioners cannot recover damages on the basis of any Eighth Amendment or procedural due process violation.

*Id.* at 683.

Finally, in the Complaint's paragraph 33, which alleges various violations of federal rights by Defendant Furda, there is its only specific reference to "Equal Protection clause[] of the

12

Fourteenth Amendment." However, nowhere does the Complaint allege, nor does Plaintiff argue

or offer to prove, facts that could support a claim that Defendant Furda violated of Plaintiff's

rights to equal protection of laws in this case.

> The Equal Protection Clause of the Fourteenth Amendment commands
> that no state shall "deny to any person within its jurisdiction the equal protection
> of the laws." U.S. Const. amend. XIV, § 1. The Supreme Court has stated that this
> language "embodies the general rule that States must treat like cases alike but
> may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799, 117 S.Ct.
> 2293, 138 L.Ed.2d 834 (1997). The states cannot make distinctions which either
> burden a fundamental right, target a suspect class, or intentionally treat one dif-
> ferently from others similarly situated with-out any rational basis for the differ-
> ence. *Id.*; *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073,
> 145 L.Ed.2d 1060 (2000) (per curiam).

*Radvansky v. City of Olmsted Falls* 395 F.3d 291, 312 (6th Cir.2005). According to the Supreme

Court, individuals with disabilities are not considered to be a suspect class. See *Brown v. Sibley*,

650 F.2d 760, 766 (5th Cir. 1981) ("No court has ever declared that handicapped persons con-

stitute a suspect class for purposes of equal protection analysis."); see also *City of Cleburne,*

*Tex. v. Cleburne Living Center*, 473 U.S. 432, 445 (1985) (declining to recognize the mentally

retarded as a quasi-suspect class for purposes of equal protection analysis); *Pace v. Bogalusa*

*City Sch. Bd.,* 403 F.3d 472 (5th Cir. 2005)(en banc). While numerous federal and state statutes

protect the disabled, the Supreme Court has not recognized the disabled as a group protected by

the Equal Protection clause of the Fourteenth Amendment.

In this case, then, Plaintiff would have to plead and prove that Defendant Furda's com-

plained of actions "lacked any rational basis." *Club Italia Soccer & Sports Organization, Inc. v.*

*Charter Tp. of Shelby, Mich.* 470 F.3d 286, 298 (6th Cir. 2006).

.... Under rational basis scrutiny, government action amounts to a constitutional
violation only if it "is so unrelated to the achievement of any combination of legit-
imate purposes that the court can only conclude that the government's actions

were irrational." *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir.2005). A "plaintiff may demonstrate that the government action lacks a rational basis ... either by negativing every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will." *Id.* at 711; see also *TriHealth, Inc.*, 430 F.3d at 788 (citing *Warren*, 411 F.3d at 710).

*Ibid.* Furthermore, irrationality or animus is a plaintiff's burden to plead and prove. "Under

rational basis review, Defendant need not offer any rational basis so long as this Court can

conceive of one; the burden falls entirely to Plaintiff to show there is no rational basis, not the

other way around." *Club Italia Soccer & Sports Org.* at 299 (citing *TriHealth, Inc. v Bd. of*

*Comm'rs*, 430 F.3d 783 at 790 (6th Cir. 2005)).

So far as the pleadings and proof offered are concerned, the situation here is much the

same as that considered by our circuit in *Bass v. Robinson*, 167 F.3d 1041 (6th Cir. 1999).

> Because Plaintiff failed to allege invidious discrimination based upon his membership in a protected class, his equal protection claim fails at the inception. See *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). In order for Plaintiff's claim to survive Defendants' motion [for summary judgment], Plaintiff had to allege that he was denied equal protection of the law based upon an unjustifiable standard such as race, religion, or other arbitrary classification. *Id.* As explained by the Court of Appeals for the Seventh Circuit in *Huebschen v. Department of Health and Social Services*, 716 F.2d 1167, 1171 (7th Cir.1983), "[a] person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." Inasmuch as Plaintiff merely alleged that he was treated unfairly as an individual by Defendants' actions, his equal protection claim was properly dismissed. *Id.*

167 F.3d 1050 (footnote omitted). For the same reasons, the result called for here is the same.

See also *Radvansky v. City of Olmsted Falls* 395 F.3d 291, 312-13 (6th Cir.2005).

In addition, Count Four of Plaintiff's Complaint, in one way or another, alleges vio-lation

of Plaintiff's Fourteenth Amendment Due Process rights by each of the Defendants, and in

14

arguing against Defendants' motion for Summary Judgment, Plaintiff's counsel relies on both

procedural and substantive due process theories. As explained by our circuit in a prisoner civil

rights case:

> The Due Process Clause has a procedural component and a substantive one.
> The two components are distinct from each other because each has different ob-
> jectives, and each imposes different constitutional limi-tations on government
> power.

*Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir.1996). The Court therefore ex-amines

Plaintiff's two Due Process arguments separately.

In *Webb v. McCullough,* 828 F.2d 1151 (6th Cir.1987), our circuit effectively adopted the

standards first set out in *Hall v. Tawney* 621 F.2d 607, 613 (4th Cir.1980) and now adopted in

several other circuits[8] for analyzing substantive Due Process claims such as Plaintiff's.

> In the context of disciplinary corporal punishment in the public schools,
> we emphasize once more that the substantive due process claim is quite different
> than a claim of assault and battery under state tort law. In resolving a state tort
> claim, decision may well turn on whether "ten licks rather than five" were ex-
> cessive, see *Ingraham v. Wright*, 525 F.2d at 917, so that line-drawing this refined
> may be required. But substantive due process is concerned with violations of per-
> sonal rights of privacy and bodily security of so different an order of magnitude
> that inquiry in a particular case simply need not start at the level of concern these
> distinctions imply. As in the cognate police brutality cases, the substantive due
> process inquiry in school corporal punishment cases must be whether the force
> applied caused injury so severe, was so disproportionate to the need presented,
> and was so inspired by malice or sadism rather than a merely careless or unwise
> excess of zeal that it amounted to a brutal and inhumane abuse of official power
> literally shocking to the conscience. See *Johnson v. Glick*, 481 F.2d 1028, 1033
> (2d Cir. 1973) (Friendly, J.). Not every violation of state tort and criminal assault
> laws will be a violation of this constitutional right, but some of course may.

*Id.* at 613; see also *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 725 (6th Cir. 1996).

---

8. See e.g. *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246 (2d Cir.2001); *Neal by Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069 (11th Cir.2000);; *Wise v. Pea Ridge Sch. Dist.*, 855 F.2d 560 (8th Cir.1988); *Garcia by Garcia v. Miera*, 817 F.2d 650 (10th Cir.1987).

Applying these standards to the present case, the Court cannot find that Plaintiff has pled, or shown that he can prove, a substantive due process violation   In a classroom setting such as that presented here, what Defendant Dennison did is no more severe a form of corporal punishment than administering a paddling after class as punishment for misbehavior during class. Regardless of what caused the incident, whatever the teacher did in this case, although causing some temporary discomfort, is not claimed to have caused severe injury entirely disproportionate to the need presented, and it simply cannot legitimately be characterized as inspired by malice or sadism, much less as brutal or inhumane abuse of official power shocking to the conscience. Consequently, there is no possible substantive Due Process violation presented by this case.

Further, as pointed out by the Western District of Pennsylvania in a recent case similar to this one, the above finding respecting Defendant Dennison's action effectively forecloses any substantive Due Process claims against the other two Defendants in this case. See *Thomas v. Board of Educ. of West Greene School Dist.* 467 F.Supp.2d 483, 492 (W.D.Pa.,2006) (citing *Brown v. Commonwealth of Pennsylvania Department of Health Emergency Medical Services Training Institute*, 318 F.3d 473, 482 (3d Cir.2003) (although a municipality can be found liable under § 1983 even when no individual officer violated plaintiff's constitutional rights, "there still must be a violation of the plaintiff's constitutional rights."); and *Searles v. Southeastern Pennsylvania Transportation Authority*, 990 F.2d 789, 794 (3d Cir.1993) ("thus, we need not reach the issue of whether SEPTA could be held liable where, as here, we have concluded that no constitutional right was violated.").

Even if a substantive Due Process violation could be found against Defendant Dennison, however, based on our circuit's analysis in *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, (6th Cir. 1996), none could be found against the other Defendants.

16

Although McCarter may have stated a substantive due process claim under section 1983 based on Leventhal's conduct, the remaining defendants cannot be held liable simply on a theory of respondeat superior. See *Monell v. Department of Social Servs.*, 436 U.S. 658, 691-95, 98 S.Ct. 2018, 2036-38, 56 L.Ed.2d 611 (1978). A supervisory employee cannot be held liable under section 1983 for the constitutional torts of those he supervises unless it is shown "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), cert. denied, 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984). In *Bellamy*, the plaintiff argued that supervisory officials at the prison in which he was incarcerated should be subject to section 1983 liability because they failed to halt harassment of him by their subordinates. Several witnesses testified that supervisory officials were notified about harassment by prison guards but no action was ever taken. *Id.* The court concluded that "Bellamy has made no showing that any of the supervisory officials who were defendants in this case actively participated in or authorized any harassment of appellant. The testimony presented by Bellamy, at best, indicates that some instances of alleged harassment were brought to the attention of prison supervisory officials." *Id.* On these facts, no supervisory liability could lie.

Viewing the facts in the light most favorable to the plaintiffs, the court must assume that these defendants had all been alerted, in some fashion, to some misconduct on the part of Leventhal. Even acknowledging this, however, cannot get the plaintiffs past *Bellamy*. As *Bellamy* makes clear, simply having some incidents of harassment brought to the attention of supervisory defendants is not sufficient to make them liable under section 1983. And here, there is, indisputably, no evidence that any of the supervisory defendants either encouraged Leventhal's behavior, or directly participated in it. The only information any of these defendants had was of isolated and apparently unrelated incidents of bad behavior by Leventhal. As such, *Bellamy* requires summary judgment in favor of the supervisory defendants.

*Id.* at 727-28. The facts of this case are less supportive, and as in *Lillard*, here "there is, indisputably, no evidence that any of the supervisory defendants either encouraged Dennison's behavior, or directly participated in it..

Finally, with respect to Plaintiff's procedural Due Process claim:

What process is due depends upon whether the deprivation of property occurs pursuant to an "established state procedure" or results from a "random, unauthorized act of a state employee." See *Mitchell*, 375 F.3d at 481-84. If the former, then "it is both practicable and feasible for the state to provide pre-deprivation process," and the state must do so regardless of the adequacy of any

17

post-deprivation remedy. *Moore v. Board of Education of the Johnson City Schools*, 134 F.3d 781, 785 (6th Cir.1998), cert. denied, 525 U.S. 929, 119 S.Ct. 336, 142 L.Ed .2d 277 (1998) (internal quotation marks omitted); see *Logan v. Zim-merman Brush Co.*, 455 U.S. 422, 436, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).  If the latter, then "predeprivation procedures are simply impracticable" and an adequate post-deprivation remedy affords all the process that is due.  See *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (internal quotation marks omitted); *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir.1991).

*Walsh v. Cuyahoga County*, 424 F.3d 510, 513 (6th Cir. 2005).  In this case, the undisputed existence of a published school-board policy against corporal punishment plus pleadings and offers of proof recounting only the single act against this Plaintiff, which did result in the teacher being reprimanded and threatened with termination of his contract, as well as a few similar acts with other students in prior years,  none of which is described as rising to the level of a substantive due process violation, precludes the possibility of finding that an "established state procedure" rather than a  "random, unauthorized act" was involved here.  Hence, only adequate post-deprivation remedies are required in order to satisfy procedural Due Process requirements..

Plaintiff's own Complaint considered in light of the Supreme Court's ruling in *Ingraham v. Wright,* 430 U.S. 651 (1977), that  "the Fourteenth Amendment's requirement of procedural due process is satisfied by Florida's preservation of common-law constraints and remedies.... and that petitioners cannot recover damages on the basis of any Eighth Amendment *or procedural due process* violation" *(Id.* at 683, emphasis supplied) effectively decides the issue.  With three counts remaining in this case alleging violations of Ohio tort law against one or more of these same Defendants, Plaintiff cannot successfully contend that he does not have adequate post-deprivation remedies to pursue upon his claims against any of the Defendants in this case.

The Court therefore concludes that as to Count Four of Plaintiff's Complaint there is no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law.

**IV.**

Because judgment dismissing Count Four removes all of the Complaint's federal claims upon which removal to this Court was based, Court will decline to exercise its 28 U.S.C. §1367 supplementary jurisdiction over the remaining state-law claims and will remand this case to the Ohio court from which it was removed. See *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 348 (1988) ("district court has discretion to remand a removed case to state court when all federal-law claims have dropped out of the action and only pendant state-law claims remain"); see also *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1267 (11th Cir. 2001); *Hinson v. Norwest Financial. South Carolina, Inc.*, 239 F.3d 611, 617 (4th Cir.2001). Exercise of the Court's discretion in this manner is clearly warranted at this stage of a case in which unresolved issues of state law remain. See *In re Romulus Community Schools*, 729 f.2d 431 (6th Cir. 1984).

Consistent with the foregoing, the Court makes the following rulings:

Plaintiff's Motion for a Continuance included in Document 14 with his Memorandum in Opposition to the Defendants" motion for summary judgment is DENIED.

The Motion for Summary Judgement of Defendants Larry Dennison, Jr., Mark Furda, and the Board of Education for the Indian Creek School District of Jefferson County, Ohio (Doc. 11) is GRANTED with respect to Count Four of Plaintiff's Complaint (Doc. 3-2) and the same is DISMISSED from said Complaint

Further, the Court declines to exercise its discretionary supplemental jurisdiction over the remaining state-law claims in Counts One, Two, and Three, whereupon the Complaint (Doc. 3-2); as modified by this Order, and this case are REMANDED to the Court of Common Pleas of

19

Jefferson County, Ohio, for all further proceedings.

      The Clerk of this Court is directed to take the administrative steps necessary to carry out this Order.

      IT IS SO ORDERED.


_3-31-2008_

Dated

Edmund A. Sargus, Jr.
United States District Judge

20